The Chief Justice, after consulting the other judges, stated that it was unnecessary for him to say any thing further on that point.
The opinion of the .court, delivered by.him a few days afterwards, was as follows This is a contest for land, óf the usual kind, each party claiming under a distinct title, derived from the commonwealth of Virginia. It is proper, first, to examine into the validity of Speed’s entry, he béing complainant in the original suit. It is in these words :
“December 23d 1782, James Speed enters 14,000 acres of land, on seven treasury warrants, lying on thé N. E. side of Gist’s creek, beginning at the lower corner of Al. Lithgrow’s pre-emption on the N. E. on the N. E. side of said creek, and running upwards with Lith-grow’s line, to the line of Charles Morgan’s pre-emption ; thence upwards with Morgan’s line, to his upper cornér on said creek ; thence continuing up said creek, and binding thereon, to the mouth of Turkey run, which j-un falls into Gist’s creek, about two miles above Morgan’s cabin, on the opposite side ; then funning up Turkey run, taking in its waters to the head thereof; then extending from the head of said run, and from the beginning, ánorth-westwardly course for quantity.”
Speed’s entry calling for Al. Lithgrow’s and Charles Morgan’s pre-emptions, their entries must also be considered as component parts of his entry. They are as follow : ....
“ October 10th 1780, Al. Lithgrow enters a pre-emption warrant of Í0ÓÓ acres, on the west fork of Licking, *477 below an improvement, adjoining a pre-emption warrant of John Morgan’s on the same, running down both sides of the same for quantity, including his improvement.”
May 11th 1780, “ Charles Morgan, heir, &c. enters 1000 aeres upon a pre-emption warrant, on the most east-wardly branch of Stoner’s fork of Licking, near the head thereof, including a spring known by the name of Morgan’s spring, and his cabin.”
These entries were all made before either of them appears to have been surveyed. Morgan’s pre-emption is called for in both of the other entries, and therefore his entry shall be attended to in the first place.
It is believed, that Stoner’s fork of Licking was commonly known by that name, at, and before the date of Morgan’s entry ; and the water course exhibited on the connected plat, is also believed to be the most eastwardly branch of Stoner’s fork. The expression, “ near the head thereof,” is too general to help the entry, unless it is aided by the expressions, “ including a spring known by the name of Morgan’s spring, and his cabin.” The proof, as to the spring, is not very particular; but a cabin is shewn, and proven to have been generally known and called Morgan’s cabin, or John Morgan’s cabin, at the date of tips éntry.
But it must be remarked, that the words of the entry are, “ Charles Morgan’s cabin, heir, &c.” which implies, that he derived his claim to the cabin intended, from some deceased relative ; and it may be presumed, that-the name of this relative was Morgan; but certainly it would be extending the presumption too far, to admit it as sufficient evidence that the given name of the person was J ohn. Indeed this relative might have purchased a right to the cabin, and a pre-emption for making it, from a person pot of the name of Morgan.
Therefore, it seems to this court, that the cabin meant by the entry, is not satisfactorily identified; and that the testimony in the cause, which very amply establishes the notoriety of John Morgan’s cabin, cannot safely be applied to the cabin in question ; or, in other words, it does not prove that John Morgan’s cabin is the one meant in this entry. The consequence is, that Morgan’s entry, which at first view appeared to be the main §Upport of Speed’s entry, is not itself supported.
*478 As to Lithgrpw’s entry, it seems to be unintelligible j at least, it is very vague and indefinite in itself, and is rendered still more so, by the defects in Morgaños entry. It may be true, that this pre-emption is on the westward’ ly fork of Licking ; but, to say the most, the cad for the west fork of Licking, can only be taken as general description ; and the entry only particularly expresses, that it is “below an improvement, adjoining a pre-emption warrant of John Morgan’s which, taken the most favorably, does not point opt what improvement it was to lie below ; nor does it point out which side of John, Morgan’s pre-emption was intended.
The expressions. “ running down both sides of the same (foe west fork) including his improvement,” might have been effectual, had the identity and notoriety gf John Morgan’s pre-emption and Lithgrow’s improvement, been proven. Rut this has not been done.. It is not even shewn that John Morgan ever obtained a pre-. emption ; it is. only proven, that in the year 1776, he built a cabin, which, by the land law of 1779, entitled him to claim,a pre-emption.
After having thus examined Morgan’s and Lith-grow’s entries, and found them insufficient to support Speed’s entry, which, is connected with them, there are only two other calls in Speed’s entry deserving of particular notice, to wit : “ Gist’s creek and Turkey run, which run falls into Gist’s creek about two miles above Morgan’s cabin, on the opposite side.” If Morgan’s cabin called for in this entry, had been ascertained, it might aid both of these calls ; and, on the other hand, these calls may aid in ascertaining the cabin intended.
It is proven that what is now generally known by the name of Stoner, was formerly, sometimes, called Sto-ner’s fork, and sometimes Gist’s creek. The expression “ Gist’s creek,” therefore, might be considered as, a good general description, if the proof had gone as far with respect to Turkey run ; but at most, it only appears, from the surveyor’s report, that there is ⅜ run emptying into Stoner’s fork, which is now called Turkey run but there is no proof that it was generally known by that name, at the time Speed’s entry was made. This being the last hope of identifying Charles Morgan’s cabin, in- . tended in Speed’s entry, the conclusion must be, that his entry cannot be sustained ; and consequently, that *479 tile circuit court for the county of Fayette, waá correct ■ili dismissing his bill. '
But this court is not prepared, nor is it necessary, to decide, (further than what is implied in the foregoing Opinion) that the reasons on which the dismissal was founded, áre correct : there may be sufficient reasons for a decree, which are not stated ; dnd those only maybe stated, w hich are not sufficient.
Wheréforé, it is decreed and ordered, that the said decree of the circuit court aforesaid, as to the dismission of the bill, with costs, be affirmed ; and that the appellant do pay unto the appellee, his costs in this behalf expended. Which is ordered to be certified to said court.